**DARROW et ux. v. TRAVELERS INS. CO. et al.**

**No. 5422.**

Court of Appeal of Louisiana. Second Circuit.

April 1, 1937.

Rehearing Denied April 30, 1937.

Writ of Certiorari and Review Denied June 21, 1937.

HAMITER, Judge.

The mother and father of Clarence M. Darrow instituted this suit to recover compensation under the Louisiana Employers' Liability Act, as amended (Act No. 20 of 1914, as amended), for the death of their said son, which occurred on October 19, 1935.

They allege that decedent was employed by the partnership of McConnell & Whitaker, which was engaged in the hazardous business of house construction, as a carpenter's helper or assistant at a weekly wage of $30; that on or about October 7, 1935, while working on a house in Shreveport in the course of his employment he fell from a bricklayer's scaffold and struck his head on a heavy piece of timber; that this blow or trauma caused a cerebral hemorrhage which later resulted in his death. Allegations of dependency for support on their deceased son are also contained in the petition.

Plaintiffs pray for a solidary judgment against the partnership, the individual members thereof, and its alleged insurer, Travelers Insurance Company, in the sum of $20 per week for a period of 300 weeks, and the further sum of $400 for medical, hospital, and funeral expenses.

Defendants in their answer admit that the business of the partnership was hazardous, and that decedent's wage was $30 per week. All other allegations of the petition

are denied. They specifically aver that the death of plaintiffs' son in no way resulted from any injury or injuries which he might have received while in the employ of said McConnell & Whitaker, but that the same was due to other causes in no way connected with said employment.

A trial was had on the issues thus formed. There was judgment in favor of Mrs. Emma C. Darrow against the partnership of McConnell & Whitaker, and against the members thereof for their virile portion, in the sum of $4.34 per week for a period not exceeding 300 weeks. Further judgment was rendered condemning said partnership and its members to pay unto plaintiff Ernest R. Darrow the sum of $197, and otherwise rejecting his demands. The demands of both plaintiffs against the Travelers Insurance Company were rejected.

The partnership and its members appealed from the judgment. Plaintiffs answered the appeal, praying that the judgment of the trial court be amended by increasing the award to $8.56 per week and granting it to both Mrs. Emma C. Darrow and Ernest R. Darrow, or, in the alternative, that it be increased in favor of Mrs. Emma C. Darrow to $8.56 per week.

No appeal was taken by defendant Travelers Insurance Company, nor by the plaintiffs, and therefore the judgment rejecting plaintiffs' demands against said insurance company is not before us for review.

As stated by plaintiffs' counsel, three questions are presented by the appeal:

(1) Did decedent meet with an accident on October 7, 1935?

(2) If so, did he receive an injury or injuries which had a causal connection with his death?

(3) Were his parents, the plaintiffs, actually dependent upon him?

The last question will be discussed first in this opinion. In this connection, it is well to observe that there is no contention that plaintiffs were wholly dependent on their son for support. The assertion is that they were only partially actually dependent on him.

Subsection 2 of section 8 of Act No. 20 of 1914, as amended by Act No. 242 of 1928, provides in part: "For injury causing death within one year after the accident there shall be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum

as hereinafter provided, for a period of three hundred weeks. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident."

That same subsection names certain persons who are conclusively presumed to be wholly and actually dependent upon the deceased employee. A parent upon a son, however, is not included in the classification. It is then stated that: "In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death." Subdivision (D).

In subdivision (I) of that subsection we find: "In all cases provided for under this Section the relation or dependency must exist at the time of the accident and at the time of death, and the mere expectation or hope of future contribution to support of an alleged dependent by an employee, shall not constitute proof of dependency as a fact."

As plaintiffs herein are not among those designated in the Employers' Liability Act as conclusively presumed to be dependent on the deceased employee, the burden rests upon them to establish by a preponderance of the evidence a state or condition of dependency on their son at the time of his alleged accident and death. Edwards et ux. v. Standard Gin & Manufacturing Co., 12 La.App. 153, 125 So. 593; Lemmler v. Fabacher, 19 La.App. 144, 139 So. 683.

The evidence discloses that in May, 1933, decedent became an enrollee in the Civilian Conservation Corps, a semimilitary organization of the United States government. He served for a period of thirteen months, or until June, 1934. Membership in that body was available only to those young men whose families were actually on the relief rolls of the federal government or were eligible for assistance of that nature. The monthly check of $25 was usually sent to the mother of the member rather than given to the member himself.

After his honorable discharge from the CCC, plaintiffs' son secured employment in

New Orleans. He began work there about July 5, 1934, and continued until May 11, 1935. According to his mother's testimony, he sent her from three to five dollars per week during that period. Some of these payments were accompanied by letters which she promised to produce and file in evidence within five days after the trial of the case. However, the referred to letters are not in the record.

On May 20, 1935, decedent went to Longview, Tex., to work with his father. He was engaged there continuously from that date until the following September 15, working five days each week. His week ends were spent in Shreveport at the home of his mother and father. Mrs. Darrow testified that on some of these week ends, he gave her $3 and on others $5.

About October 4, 1935, he began his work with defendant McConnell & Whitaker. The wages which he received at the end of that week, or on October 11, amounted to $30. According to his mother's testimony, this money was given to her and was used for household expenses and to pay taxes.

Mrs. Darrow further testified that, during the months of May, June, and July of 1935, her son bought certain paints and other materials amounting approximately to $40, used in the making of repairs to plaintiffs' home.

It is shown by the testimony of neighbors and friends of the family that decedent was a fine young man, and was very devoted, kind, and affectionate to his father and mother, and especially to the latter. Also, that he was active, vigorous, and alert, and was never ill except during infancy and the last few days of his life.

When questioned about the support provided by her husband, Mrs. Darrow stated:

"Q. Mrs. Darrow, hasn't Mr. Ernest Darrow been supporting you ever since you and he married? A. Yes.

"Q. As a matter of fact he has been supporting you, hasn't he? A. Yes.

"Q. Sometimes he would be out of work but he would always make that up and when he would go back to work he would support you? He has been supporting you and been the support of your family since you married him and since you have had your children, hasn't he? A. Yes."

Decedent's father, one of the plaintiffs herein, is a journeyman carpenter by trade and is usually employed on building jobs as a supervisor or superintendent at a wage of $1 per hour, or $8 per day. With reference to his employment, and particularly that during 1935, the year in which his son died, he testified:

"Q. About what part of 1935 were you employed? A. Well, from February up until about September. Are you going to spend my money for me?

"Q. No. I don't know what you mean by that. I am asking you questions now. I will ask you if during the last year you did not make a living for your family? A. I did.

"Q. You did, did you not? A. I did.

"Q. That is right. Ever since you have married you have been making a living although at times you were not employed? A. I made a fairly good living up until the time of the depression.

"Q. That is right. A great many others did not make a living then, isn't that a fact? A. That is what I understand.

"Q. Your situation was not an exception, was it? A. I believe not.

"Q. After the depression you began to be employed and you have been employed more or less ever since and have been making a living for your family? A. Yes.

"Q. You are now making a living for your family, are you not? A. Such as it is.

"Q. You made a living for your family in 1935, did you not, a fair living? A. Well, we managed to get by on something like Seventy-two ($72.00) Dollars a month."

The following testimony was given by Mr. Darrow regarding contributions claimed to have been made by decedent:

"Q. Mrs. Darrow has testified that when young Clarence was at home he paid board, is that true? A. I had not heard of it.

"Q. He probably paid her. Do you know anything about it? A. I hadn't heard about it.

"Q. You do not know it? A. No, sir, I haven't.

"Q. You did not know that he paid her anything, did you? A. No. He was in debt to me when he died.

"Q. He was? A. Yes.

"Q. You do not know whether he ever paid her anything for board or otherwise for the support of the family? A. No, I cannot truthfully say. I cannot answer that.

"Q. You say he owed you when he died, Mr. Darrow? A. Yes.

"Q. How much? A. Something like Seventy-five ($75.00) Dollars.

"Q. Money you had advanced him? A. Yes.

"Q. Would you state how old the debt was? A. Well, it was from July until he died.

"Q. I see. A. Wait a minute. Along about possibly the first of May. I don't know the exact date he came to me for the loan.

"Q. If Mrs. Darrow received anything from him during the time he owed you Seventy-five Dollars, either by way of payment on that account or otherwise, you do not know it? A. No.

"Q. As a matter of fact you do not know that he ever gave her any money except as gifts, do you? A. No, only as gifts. I do know I was cognizant of the fact that he gave his mother—I was cognizant of the fact but I didn't see it pass.

"Q. They were small gifts of a child to his mother, were they not? A. Yes."

If the alleged accident and death of decedent had occurred during or about the period that he was a Civilian Conservation Corps enrollee, perhaps it might be said that his parents were actually dependent on him. That organization was established and maintained not only for the purpose of providing healthful benefits for young men, but also to furnish pecuniary assistance to parents, through the enlistment therein of their sons, who were prevented by unsettled economic conditions from enjoying a suitable livelihood. But decedent's enrollment there was from May, 1933, until June, 1934, while the asserted accident and his death, at which time the question of dependency is to be determined, took place more than a year after his discharge, or in October, 1935.

When consideration is given to the evidence in the record relating to the assistance furnished by decedent to his parents during the year 1935, it is to be noticed that Mrs. Darrow, on the one hand, told of frequent contributions being made, while her husband, on the other hand, stated definitely that he provided a living for his family, knew of no such payments made by his son, and that decedent was indebted to him at the time of his death. In view of the positive testimony of Mr. Darrow, one of the plaintiffs, who was living with his family and in the eyes of the law was its head and master, we are forced to conclude that plaintiffs have not discharged the burden of proving, by a preponderance of the evidence, a condition of actual dependency on their son.

The conclusion just announced makes unnecessary a discussion of the other questions presented by the appeal.

Accordingly, the judgment of the trial court is reversed and set aside, and judgment is now rendered rejecting plaintiffs' demands at their cost.