Leopold Olivero, a minor seventeen years of age, met his death on July 3, 1942 as the result of an accident which befell him while engaged in the performance of his duties as stock boy for the defendant, McKesson and Robbins, Inc. His mother, Mrs. Louise Regina, widow by first marriage of Joseph Olivero and now wife of Robert Stubblefield, claiming that she and her minor son, Raymond Olivero, were dependent upon the earnings of her deceased son for support, brought this suit to recover 300 weeks compensation under the Employers' Liability Statute, Act No. 20 of 1914, as amended.
The sole defense in the case is that neither plaintiff nor her son, Raymond, was actually, either wholly or partially, dependent for support upon the earnings of the deceased at the time of his demise. After a hearing on this restricted issue, the judge of the lower court, being of the opinion that Mrs. Stubblefield was actually partially dependent on the earnings of the deceased, granted a judgment in her favor for the minimum allowance of $3 for 300 weeks under the Employers' Liability Act. He, however, dismissed her claim on behalf of her minor son, Raymond Olivero, as be found that the evidence did not establish dependency on his part. The defendant has appealed from the decision of the court below. No appeal has been taken by plaintiff from the judgment dismissing her claim on behalf of her son, Raymond, and she has not answered defendant's appeal asking for an increase of the award in her favor. Therefore, the sole question presented to us for determination is whether plaintiff was partially dependent for support upon the earnings of the deceased within the contemplation of the Employers' Liability Act.
[1] Inasmuch as the parents of a deceased employee are not listed among those persons who are conclusively presumed to be dependents under Subsection 2, paragraphs (A) through (D) of Section 8 of the Employers' Liability Act, Act No. 242 of 1928, p. 359, the question of actual dependency, in whole or in part, is one of fact and the burden was accordingly upon plaintiff to exhibit such dependency by a preponderance of evidence.
Counsel for defendant assert that the proof submitted by plaintiff in this case falls far short of showing partial dependency by her upon the earnings of her son and they rely, in the main, on three written statements, which were offered in evidence by defendant at the trial, in support of their argument. These statements consist of (1) a signed application by the deceased for employment with the defendant, dated March 17, 1942; (2) a signed statement by plaintiff's husband, Mr. Stubblefield, which was given to defendant on July 8, 1942, and (3) another signed statement which was given by plaintiff to defendant on the same day.
In the written application of the deceased for employment with the defendant, he stated that he did not have any dependents. The statement of Mr. Stubblefield is to the effect that he was employed at Delta Shipyard and was earning $58.24 per week; that Mrs. Stubblefield is his sole dependent; that he rented the house in which they lived; that he gave her about $15 per week to run the house; that he clothed her and supplied her with all the necessities of life and that he did not know the amounts which her son, Leopold, gave to her as he considered that to be none of his business. The statement of plaintiff is to the effect that she is supported by her husband; that she is entirely dependent upon him but that she does receive other income from her sons; that, previous to and at the time of his death, the deceased gave her each week approximately one-half of his earnings and that she had another son in the Navy who sent her $35 per month. *Page 432 
The testimony of plaintiff on the witness stand is not in substantial variance with the signed statement she gave to the defendant after her son's death. She, however, says that she did not desire to sign the statement; that the representative of the defendant induced her to sign it; that all of the declarations therein contained are not correct and that, as a matter of fact, her son, Leopold, gave her his entire weekly earnings, which averaged $14. She further says that her son, Raymond, was working at the time; that he likewise gave her his earnings each week; that she needed the earnings of her two sons to assist her in buying food and clothing for the family, as the $15 per week supplied by her husband, was insufficient to run the household and that the $35, which she was supposed to get from her other son in the Navy, was never received by her. The testimony of Mr. Stubblefield is not unlike the signed statement he gave to the defendant.
[2, 3] We do not find it important to determine whether the statements given by the deceased, his mother and his step-father to the defendants are wholly true or not forasmuch as the evidence in the case makes it quite plain to us that the contributions made by the deceased to his mother were just about sufficient to take care of his board and lodging at the home of his step-father. The picture which the evidence portrays to us of the conditions prevailing at the Stubblefield home is as follows: After plaintiff's marriage to Mr. Stubblefield she and her two minor sons, Leopold and Raymond, lived with him in a house which he had leased. In addition to supplying adequate lodging to plaintiff and her sons, her husband clothed her and gave her $15 per week to purchase food and other necessities of the home. This amount, while sufficient to take care of the board of Stubblefield and plaintiff, was obviously inadequate to supply food and clothing for her sons. The support of these boys, 14 and 17 years of age, was plaintiff's obligation and not that of their step-father. Since the amount furnished by Stubblefield was insufficient to supply the needs of plaintiff's sons, they were required to obtain employment. Their earnings were about sufficient to feed and clothe them and to give them a few dollars per week for pocket money.
Thus we see that the plaintiff was not in any way dependent upon the earnings of her son, Leopold, for her own support and maintenance. Nor did she need his earnings for the support of her other son, Raymond, as he was working and contributing to his own maintenance. The income of the deceased, which was $14 per week and of which he gave at least one-half to his mother, was just about adequate to defray the cost of his board and clothing.
Hence, the question arises whether, under these circumstances, the plaintiff was dependent upon him for support within the meaning of subsection 2 of Section 8 of the Employers' Liability Act? A literal reading of these provisions would seem to require a holding that dependency by the mother on the earnings of the minor did not exist for the act, in defining dependency, states in effect that the claimant must be either actually wholly dependent or actually partially dependent upon the earnings of the deceased "for support". Therefore, since the plaintiff was not dependent upon her son's earnings for her own maintenance, it could be said that no dependency in fact existed. On the other hand, by giving the provisions of the act the liberal interpretation and construction which we are bound to do, it will be at once seen that a minor, who is employed and contributes his earnings, in whole or in part, to his parent, is in effect partially supporting his parent in that he relieves the parent from the performance of an obligation due the minor by law — that is, the duty of the parent to support and maintain him during his minority. Under Articles 224 and 227 of the Civil Code, the plaintiff owed to her minor son the duty of supporting, maintaining and educating him according to her situation in life. She was relieved of this duty, in this case, as her son became self-sustaining by producing earnings sufficient for his own need. Therefore, it logically follows that she was dependent on the contributions he made to her to the extent that those contributions were used to feed, clothe and otherwise maintain him.
This view is not without precedent in this state. In Heinzelman v. Board of Com'rs, 149 La. 215, 88 So. 798, it appeared that plaintiff's minor son was contributing to the support of the family home at the time of his death. The evidence showed that the amount earned by plaintiff (the deceased's father), while sufficient to take care of his own needs, was inadequate to sustain the entire family and the contributions of the son were used to supplement this deficiency. The question presented to *Page 433 
the Supreme Court was whether, under those circumstances, the father could be said to be dependent upon the son for support. The court answered in the affirmative, being of the opinion that, since the plaintiff was unable to fully discharge his legal obligation to support his wife and other children and was required to use part of the money earned by his son to comply with it, he was dependent upon the deceased to the extent of the contributions made by the latter for the upkeep of the family. See also Harris v. Calcasieu Long Leaf Lumber Co.,149 La. 649, 89 So. 885 and Hamilton v. Texas Co., 151 La. 692, 92 So. 301.
The Heinzelman case strikes us as being controlling here and to be complete authority for the judgment in plaintiff's favor. The only difference between this case and the Heinzelman case is that, in the latter, the earnings of the deceased were used by the parent to comply with an obligation owed by him to his wife and other members of the family, whereas, here, the contributions made to plaintiff by her deceased son were used by her to supply food, clothing and other necessities for the support of the deceased himself. In principle, no distinction whatever exists for, in each case, the earnings of the minor relieved the parent of a duty which he or she was bound to perform and the parent was dependent on the earnings of the deceased to the extent of the contributions made.
[4] In arriving at this conclusion, we have not failed to realize that it might be plausibly argued that this case requires a different result from that reached in the Heinzelman case in that, here, the plaintiff has not sustained a financial loss by the death of her son since his death has relieved her of the obligation to support him, — whereas, there, the father lost the contributions made by the son towards the upkeep of the entire family. Such an argument could be said to be in keeping with the spirit of the Workmen's Compensation law for it was unquestionably the purpose of the Legislature, in passing this statute, to provide for payments only to those persons who would sustain a financial loss as the consequence of the death of the employee. See Atchison v. May,201 La. 1003, 10 So.2d 785. However, the provisions of the act are such as to preclude us from denying compensation to plaintiff on the theory that she has not sustained a financial loss as the result of the death of her son, inasmuch as paragraph (I) of Subsection 2 of Section 8 of the statute prescribes that dependency is tested by the conditions prevailing "at the time of the accident and at the time of the death" of the employee. Therefore, since plaintiff was dependent upon her minor son for the contributions made by him to his own support at the time of his accident and death, she is a dependent under the law.
Counsel for defendant rely on the case of Darrow v. Travelers' Ins. Co., La. App., 175 So. 98 wherein it was found on the facts that the parents of the deceased were not dependent upon him for support. That case is not in point for the reason that the deceased was not a minor, who was providing for his own maintenance, and, therefore, was not performing an obligation which was due him by his parents.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.